# United States Court of Appeals

*for the*

# Eighth Circuit

Case No. 25-2759

NATIONAL LEGAL AND POLICY CENTER; PETER T. FLAHERTY;
JAMES R. TOVAR, also known as Jamie R. Tovar,

*Plaintiffs-Appellants,*

– v. –

BERKSHIRE HATHAWAY, INC.; WARREN BUFFET;
CHRIS THOMPSON; DAN CLARK,

*Defendants-Appellees.*

ON APPEAL FROM AN ORDER ENTERED IN THE UNITED STATES DISTRICT
COURT THE DISTRICT OF NEBRASKA – OMAHA IN NO. 8:24-CV-00162-BCB
THE HONORABLE BRIAN C. BUESCHER, JUDGE PRESIDING

## BRIEF FOR DEFENDANTS-APPELLEES BERKSHIRE HATHAWAY, INC., WARREN BUFFET AND DAN CLARK

BRYCE FRIEDMAN
MEREDITH KARP
SIMPSON THACHER & BARTLETT LLP
*Attorneys for Defendants-Appellees*
425 Lexington Avenue
New York, New York 10017
(212) 455-2000

CP COUNSEL PRESS     (800) 4-APPEAL • (3888879)

## SUMMARY OF THE CASE

Plaintiff-Appellant Peter Flaherty is a trespasser who disrupted the annual shareholder meeting of Defendant-Appellee Berkshire Hathaway, Inc. Mr. Flaherty was ordered to leave the CHI Health Center Arena by the presiding chair of the meeting, security guards, and an Omaha police officer. After being warned he would be arrested for refusing to leave, Mr. Flaherty nonetheless refused and was arrested by the non-party officer. The District Court correctly found that, because each of these facts were pled in the Complaint, (i) Defendants could not be liable as a matter of law for the exercise of their right to eject Mr. Flaherty as a common law trespasser; (ii) Mr. Flaherty's assistant (Plaintiff-Appellant Tovar) did not plead facts sufficient to sustain intentional torts because he was not permitted to follow Mr. Flaherty during the course of his arrest; and (iii) Plaintiffs-Appellants did not detrimentally rely on a promise by Defendants-Appellees to incur the cost of attending the annual meeting sufficient to sustain a promissory estoppel claim.

The District Court's decision is a straight-forward application of well-established Nebraska common law based on facts expressly pled in the Complaint. Defendants-Appellees welcome oral argument of 20 minutes per side if it will assist the Court in deciding the case.

1

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eighth Circuit Rule 26.1A, Defendant-Appellee, Berkshire Hathaway, Inc., through its undersigned counsel, hereby states as follows:

Berkshire Hathaway, Inc. is a publicly traded company.  It is not owned by any parent company, and no publicly held corporation owns more than 10% of the stock of Berkshire Hathaway, Inc.

# TABLE OF CONTENTS

SUMMARY OF THE CASE ..............................................................................1

CORPORATE DISCLOSURE STATEMENT .............................................2

JURISDICTIONAL STATEMENT ...............................................................1

STATEMENT OF ISSUES ............................................................................1

STATEMENT OF THE CASE ........................................................................2

    I.    Factual Background...........................................................................2

        a.    The Parties.............................................................................2

        b.    NLPC's Shareholder Proposal ......................................3

        c.    Plaintiffs-Appellants' Presentation at the 2023
            Shareholder Meeting.............................................................4

    II.    Plaintiffs-Appellants File Suit........................................................8

        a.    The District Court's First Order of Dismissal ..........................9

        b.    Plaintiffs-Appellants Seek Leave to File the Amended
            Complaint............................................................................11

        c.    Plaintiffs-Appellants File the Amended Complaint .................11

SUMMARY OF ARGUMENT .....................................................................14

ARGUMENT ...............................................................................................18

    I.    Standard of Review .......................................................................18

    II.    The District Court Correctly Found That Mr. Flaherty's Self-
        Pled Trespass Is Fatal To His Intentional Tort Claims As A
        Matter of Law................................................................................18

        a.    The District Court Correctly Ruled That Mr. Flaherty Is a
            Trespasser Under Nebraska Common Law .............................18

        b.    Mr. Flaherty's Self-Alleged Violation of Omaha's
            Request to Leave Ordinance Provides an Independent
            Basis to Affirm Dismissal of Mr. Flaherty's Tort Claims.......21

        c.    The District Court Properly Rejected Mr. Flaherty's
            Argument That He Was A "Special Invitee" Immune
            From Nebraska Trespass Law................................................25

III. The District Court Correctly Dismissed Mr. Tovar's Intentional Tort Claims (Counts VI, VII & VIII)....................................................28

IV. The District Court Properly Dismissed Mr. Flaherty's and NLPC's Promissory Estoppel Claim....................................................32

V. The Judgment For Defendant Clark Should Be Affirmed For The Additional Reason That Plaintiffs Did Not Oppose His Motion To Dismiss....................................................35

VI. The Judgment For Defendant Thompson Should Be Affirmed For The Additional Reason That Plaintiffs Did Not Serve Him With A Summons And Complaint Pursuant to Rule of Civil Procedure 4....................................................35

CONCLUSION....................................................36

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................18

*Barton v. Taber*,
820 F.3d 958 (8th Cir. 2016) ...................................................................18

*Bell v. Dow Chem. Co.*,
No. 21-326-SDD-SDJ, 2022 WL 1221639 (M.D. La. Mar. 11, 2022) ...............31

*Bissonette v. Luskey*,
No. Civ. 02-335 ADM/AJB, 2003 WL 1700466 (D. Minn. Mar. 27,
2003) .........................................................................................................31

*Bradley Timberland Res. v. Bradley Lumber Co.*,
712, F.3d 401 (8th Cir. 2013) ...................................................................18

*Cowperthwait v. Brown*,
117 N.W. 709 (Neb. 1908)........................................................................19

*Crosby v. State*,
696 S.W.2d 388 (Tex. Ct. App. 1985)......................................................25

*Dangberg v. Sears, Roebuck & Co.*,
252 N.W.2d 168 (Neb. 1977) ...................................................................32

*Davis v. City of Little Rock*,
122 F.4th 326 (8th Cir. 2024) ........................................................... 20, 32

*Dion v. City of Omaha*,
973 N.W.2d 666 (Neb. 2022)....................................................................15

*Edgar v. Omaha Pub. Power Dist.*,
89 N.W.2d 238 (Neb. 1958) ......................................................................26

*Farm Credit Servs. of Am., FLCA v. Haun*,
734 F.3d 800 (8th Cir. 2013) ....................................................................18

*Fast Ball Sports, LLC v. Metro. Ent. & Convention Auth.*,
835 N.W.2d 782 (Neb. App.  2013)..........................................................33

*Fuller v. Sec'y of Def. of the United States*,
30 F.3d 86 (8th Cir. 1994) ................................................................35

*Guzman v. Barth*,
552 N.W.2d 299 (Neb. 1996)............................................................14

*Hoffmann v. United States*,
21 F. App'x 528 (8th Cir. 2001) (per curiam) (unpublished opinion) .................36

*Johnson v. McCarver*,
942 F.3d 405 (8th Cir. 2019) ............................................................26

*Jones v. City of St. Louis*,
104 F.4th 1043 (8th Cir. 2024) ........................................................18

*Kenney v. Barna*,
341 N.W.2d 901 (Neb. 1983) ............................................................10

*Kulkay v. Roy*,
873 F.3d 637 (8th Cir. 2017) ............................................................31

*Lambert v. Holmberg*,
712 N.W.2d 268 (Neb. 2006) ............................................................14

*Lovell v. City of Kearney*,
263 N.W.2d 867 (Neb. 1978) ............................................................34

*Maynard v. State*,
116 N.W. 53 (Neb. 1908) ................................................................14

*McReynolds v. Glenn*,
753 F. App'x 426 (8th Cir. 2019) (per curiam) (unpublished opinion)................36

*Mungai v. Univ. of Minn.*,
141 F.4th 959 (8th Cir. 2025) ..........................................................36

*Noble Sys. Corp. v. Alorica Cent., LLC*,
543 F.3d 978 (8th Cir. 2008) .................................................... 15, 22

*Penn v. Iowa State Bd. of Regents*,
999 F.2d 305 (8th Cir. 1993) ............................................................35

*Pinkston v. Bd. of Educ. of City of Chicago*,
No. 19 CV 6477, 2023 WL 6392302 (N.D. Ill. Oct. 2, 2023)............................31

*Reed v. Chicago, B. & Q.R. Co.*,
120 N.W. 442 (Neb. 1909)................................................................14

*Rivera v. Bank of Am., N.A.*,
  993 F.3d 1046 (8th Cir. 2021) .................................................................35

*Rotskoff v. Cooley*,
  438 F.3d 852 (8th Cir. 2006) ...................................................................20

*Saadoon v. Barr*,
  973 F.3d 794 (8th Cir. 2020) ........................................................... 29, 32

*Simon v. Gladstone*,
  No. 23-1431, 2025 U.S. App. LEXIS 5254 (4th Cir. Mar. 6, 2025) ....................30

*State ex rel. Belker v. Bd. of Educ. Lands & Funds*,
  171 N.W.2d 156 (Neb. 1969) ...................................................................22

*State v. Goering*,
  Nos. A-93-1128, A-93-1129, A-93-1130, A-93-1133, 1994 WL
  585763 (Neb. Ct. App. Oct. 25, 1994) .......................................................21

*Trinity Wall St. v. Wal-Mart Stores, Inc.*,
  792 F.3d 323 (3d Cir. 2015) ....................................................................28

*United States v. Armstrong*,
  517 U.S. 456 (1996)................................................................................24

*United States v. Camberos-Villapuda*,
  832 F.3d 948 (8th Cir. 2016) ...................................................................12

*United States v. Molsbarger*,
  551 F.3d 809 (8th Cir. 2009) ...................................................................26

*Weitz Co., LLC v. Hands, Inc.*,
  882 N.W.2d 659 (Neb. 2016) ...................................................................32

*Wright v. City of Ponca City*,
  No. CIV-21-1158-HE, 2022 U.S. Dist. LEXIS 141987 (W.D. Okla. July
  28, 2022) ..............................................................................................30

*Wright v. Preston Res., Inc.*,
  639 N.W.2d 149 (Neb. Ct. App. 2002)........................................................25

*Zink v. Lombardi*,
  783 F.3d 1089 (8th Cir. 2015) .................................................................29

## Rules/Statutes

Neb. Rev. Stat. § 21-260 ...............................................................................25

Omaha Mun. Ordinance § 20-154 ............................................................ 19, 20

Omaha Mun. Ordinance § 20-155 ................................................. 13, 19, 20, 21

## Other Authorities

Rule 12(b)(6) .............................................................................................29

Rule 8(a) ...................................................................................................29

## Regulations

17 C.F.R. § 240.14a-8 ............................................................................ 25, 31

## Other

https://nlpc.org/wp-content/uploads/2023/12/NLPC-SEC-Complaint-12-
19-23.pdf (last visited December 19, 2025) .......................................................26

# JURISDICTIONAL STATEMENT

Defendants-Appellees incorporate Plaintiffs-Appellants' jurisdictional statement.

# STATEMENT OF ISSUES

1.      Whether the District Court's judgment dismissing Mr. Flaherty's intentional tort claims (Counts I, II, IV & V) should be affirmed because his self-alleged trespass gave Defendants-Appellees the privilege to eject him from the property?

Apposite Authorities: *Guzman v. Barth*, 552 N.W.2d 299, 301 (Neb. 1996); *Kenney v. Barna*, 341 N.W.2d 901, 902 (Neb. 1983); *Cowperthwait v. Brown*, 117 N.W. 709, 712 (1908); Omaha Mun. Ordinance § 20-155 (1980).

2.      Whether the District Court's judgment dismissing Plaintiff-Appellant Mr. Tovar's intentional tort claims (Counts VI, VII & VIII) should be affirmed because his allegations were mere legal conclusions reciting the elements of the causes of action?

Apposite Authorities: *Saadoon v. Barr*, 973 F.3d 794, 805 n.7 (8th Cir. 2020).

3.      Whether the District Court's judgment dismissing Plaintiffs-Appellants National Legal Policy Center and Mr. Flaherty's promissory estoppel claim (Count IX) should be affirmed because they pled no promise by Defendants-Appellees on which they detrimentally relied?

Apposite Authorities: *Lovell v. City of Kearney*, 263 N.W.2d 867, 868 (Neb. 1978); *Fast Ball Sports, LLC v. Metro. Ent. & Convention Auth*, 835 N.W.2d 782 (Neb. Ct. App. 2013).

## STATEMENT OF THE CASE

### I.   Factual Background

a.   <u>The Parties</u>

National Legal and Policy Center ("NLPC") is allegedly a nonprofit organization that "addresses corporate governance and policy issues through shareholder activism."[1] App. 119 R. Doc. 56, at 3, ¶ 10.[2] Peter Flaherty is NLPC's Chairman, and James Tovar is a "senior staff member" of NLPC. App. 119, 121 R. Doc. 56, at 3–5, ¶¶ 12, 21.

Berkshire Hathaway is a Delaware corporation with its headquarters in Nebraska. App. 118 R. Doc. 56, at 2, ¶ 7. Warren Buffett is the Chairman and Chief Executive Officer of Berkshire Hathaway (together with Berkshire Hathaway, the

---

[1]   Although not alleged in the Complaint, Defendants-Appellees do not dispute that NLPC was a shareholder of Berkshire Hathaway Inc. ("Berkshire Hathaway") at all relevant times. Neither Mr. Flaherty nor Mr. Tovar are alleged to be shareholders of Berkshire Hathaway.

[2]   Except where Defendants-Appellees refer to the Original Complaint, Defendants-Appellees cite to the Amended Complaint as the operative pleading (App. 117 R. Doc. 56, at 1).

"Berkshire Defendants-Appellees"). App. 120 R. Doc. 56, at 4, ¶ 16. Chris Thompson and Dan Clark (the "Security Guards")[3] were allegedly "plain clothes" security guards "hired by Berkshire [Hathaway]." App. 122–123 R. Doc. 56, at 6–7, ¶ 28. Except for jurisdictional allegations, the Complaint refers to the Security Guards as one entity. AplntAdd. 37 App. 137 R. Doc. 71, at 7, n.3; *see, e.g.*, App. 123 R. Doc. 56, at 7, ¶ 30 ("Chris Thompson and/or Dan Clark summoned a uniformed Omaha police officer.").

    b.    NLPC's Shareholder Proposal

Before Berkshire Hathaway's 2022 shareholder meeting ("Annual Meeting"), NLPC submitted a shareholder proposal calling for an independent director—rather than the CEO—to be chair of the Board of Directors of Berkshire Hathaway. Mr. Flaherty spoke in favor of NLPC's proposal at the 2022 meeting "without incident." App. 119 R. Doc. 56, at 3, ¶ 14.

---

[3]    Because the Complaint alleges the Security Guards were "hired by" Defendant-Appellee Berkshire Hathaway, Defendants-Appellees assume, without conceding, that the Security Guards were agents of Berkshire Hathaway for purposes of this appeal, as the District Court did below. AplntAdd. 7 App. 98 R. Doc. 36, at 7. However, there are no facts alleging or showing the Security Guards were Mr. Buffett's agents. App. 38 R. Doc. 21, at 10. Thus, he cannot be liable for the conduct of the Security Guards—the only allegedly tortious conduct in the Complaint—and judgment is proper for him on that basis as well.

In October 2022, NLPC submitted a similar shareholder proposal calling for "two separate people [to] hold the office of the Chairman" and "CEO." AplntAdd. 2 App. 93 R. Doc. 36, at 2. Berkshire Hathaway included that proposal in its March 17, 2023 Proxy Statement. *See* App. 75, 79 R. Doc. 22-2 at 21, 25; App. 120 R. Doc. 56, at 4. In its proxy submission, NLPC stated that it "intend[ed] to present" the independent chair proposal at the Annual Meeting, along with a "supporting statement" arguing that the roles of chairman and CEO are "diminished when held by a singular company official, thus weakening its governance structure." App. 75 R. Doc. 22-2, at 17. NLPC cited "expert perspectives" explaining the benefits of an independent chair on "the board's oversight of management," the "corporation's risk management ability," and the creation of a "thoughtful and dynamic board." App. 75–76 R. Doc. 22-217–18.

c.    <u>Plaintiffs-Appellants' Presentation at the 2023 Shareholder Meeting</u>

NLPC was required to present its shareholder proposal at Berkshire Hathaway's Annual Meeting on May 6, 2023, which was held at the CHI Health Center Arena (the "Arena"). App. 121 R. Doc. 56, at 5, ¶¶ 21–22. Mr. Flaherty and Mr. Tovar received tickets, or "credentials," to attend the Annual Meeting—Mr. Flaherty to deliver NLPC's shareholder proposal and Mr. Tovar to accompany Mr. Flaherty. App. 121 R. Doc. 56, at 5, ¶¶ 22–23.

When Mr. Flaherty arrived at the microphone zone prior to his presentation, a Berkshire Hathaway representative informed Mr. Flaherty that a "three minute time limitation" on presentations would be "strictly enforced" and warned him to stay "on topic" during his presentation. App. 121 R. Doc. 56, at 5, ¶ 23; App. 121.

Mr. Flaherty opened his remarks by stating that "[i]f [Berkshire Hathaway] had an independent chair, the company would be less identified with Mr. Buffett's political activities." *See* App. 86 R. Doc. 22-3, at 277:9-11.[4] Mr. Flaherty did not discuss the concept of an "independent chair" again. Instead, he disclaimed the "virus" of "philanthropy" (App. 86 R. Doc. 22-3, at 277:18-19) and criticized the Gates Foundation for "bankroll[ing] . . . critical race theory" and "offer[ing] a gender identity toolbox" (App. 86 R. Doc. 22-3, at 277:18-25).

One minute and eight seconds into Mr. Flaherty's presentation, he was warned again to "stay 'on topic.'" App. 122 R. Doc. 56, at 6, ¶ 25. Mr. Flaherty asked Mr. Buffett for permission to continue speaking. *Id.* After Mr. Buffett let him continue (App. 122 R. Doc. 56, at 6, ¶ 26), Mr. Flaherty began to make personal remarks about Bill Gates, another Berkshire Hathaway shareholder. App. 87 R. Doc. 22-3, at 278:12–17 ("[W]e know how much Bill Gates cares about children.

---

[4] Plaintiffs-Appellants agree that the Transcript of the Annual Meeting (R. Doc. 22-3) was incorporated by reference in the Complaint.

He met and traveled with Jeffrey Epstein many times . . . after Epstein was convicted of sex crimes."). Mr. Buffett attempted to remind Mr. Flaherty not to make "attacks on an individual." App. 87 R. Doc. 22-3, at 278:23–24.

At that time, Mr. Buffett "appeared to give direction to other persons in the hall." App. 122 R. Doc. 56, at 6, ¶ 26. The Security Guards then told Mr. Flaherty to "leave or he would be arrested." App. 122–123 R. Doc. 56, at 6–7, ¶ 28. In response, Mr. Flaherty allegedly told the Security Guards that "Mr. Buffett is in the chair and he will rule, not you." *Id.* Mr. Buffett concluded Mr. Flaherty had "crossed the boundary" by making personal attacks and asked Mr. Flaherty to be removed from the room. App. 88 R. Doc. 22-3 at 279:2–6; App. 123 R. Doc. 56, at 7, ¶ 29 ("Mr. Buffett . . . ordered that Mr. Flaherty be ejected."). After Mr. Flaherty indicated that he would not leave, Mr. Buffett "and/or one or more of his agents" "ordered that Mr. Flaherty be ejected" from the Arena. App. 123 R. Doc.56, at 7, ¶ 29.

When Mr. Flaherty again refused to leave, one of the Security Guards waved over a nearby police officer, who is not a defendant in this action. App. 123 R. Doc. 56, at 7, ¶ 30. The police officer watched the Security Guards ask Mr.

Flaherty to leave.[5]  After Mr. Flaherty again refused to leave, the non-party Omaha police officer "grabbed Mr. Flaherty by the arm, advised him that he was under arrest, and led him from the arena."  *Id.*

Mr. Tovar attempted to "follow Mr. Flaherty," but a Security Guard "prevented him from doing so."  *Id.*  Mr. Tovar allegedly remained at the Annual Meeting.  *Id.*  Mr. Tovar does not allege if he attempted to, or was authorized to, vote on NLPC's behalf.

After Mr. Flaherty was removed from the Arena, he was issued a "Report on the Issuance of a Ban and Bar Letter" by the Omaha Police Department, which identified Mr. Flaherty as a trespasser and the Omaha officer "present" at the time of the trespass.  ApleeAdd. 1 App. 147 R. Doc. 26-1, at 1; App. 123 R. Doc. 56, at 7, ¶ 31.  Mr. Flaherty was transported to the Omaha Police Department and charged with a violation of Omaha's Request to Leave Ordinance, "a violation akin to criminal trespass."  App. 123 R. Doc. 56, at 7, ¶ 31.  He was permitted to leave after posting bail of $250.  App. 123, 126 R. Doc 56, at 7, ¶ 31, 10, ¶ 60.  The prosecutor exercised his discretion to dismiss the charges, without entering a decision on the

---

[5]    The District Court found, and Plaintiffs-Appellants concede, that Mr. Flaherty's video footage of the arrest is incorporated by reference in the Complaint. AplntAdd. 15 App. 106 R. Doc. 36, at 15.

merits.  ApleeAdd. 1 App. 147 R. Doc. 26-1, at 1.  In all, Mr. Flaherty was detained for three hours.  App. 123 R. Doc. 56,  at 7, ¶ 31.

## II.    Plaintiffs-Appellants File Suit

On May 3, 2024—the day before Mr. Flaherty presented at Berkshire Hathaway's 2024 annual shareholders meeting—Plaintiffs-Appellants filed this lawsuit against Defendants-Appellees Berkshire Hathaway, Mr. Buffett, and the Security Guards, then identified as "John Does 1 and 2."  App. 11 R. Doc. 1, at 2, ¶ 9. The Complaint asserted nine counts against the Berkshire Defendants-Appellees and/or the Security Guards based largely on the conduct of a non-defendant police officer.

Mr. Flaherty brought five intentional tort claims: assault (Count I); battery (Count II); intentional infliction of emotional distress (Count III); false imprisonment (Count IV); and malicious prosecution (Count V).  App. 16–19 R. Doc. 1, at 7–10, ¶¶ 32–64.  Mr. Tovar brought three intentional tort claims: assault (Count VI); battery (Count VII); and false imprisonment (Count VIII).[6]  App. 20–21 R. Doc. 1, at 11–12, ¶¶ 65–84.  NLPC and Mr. Flaherty also brought a promissory

---

[6]    The Complaint mislabeled Mr. Tovar's false imprisonment claim as "Count IV."  App. 21 R. Doc. 1, at 12.

estoppel claim (Count IX), based on an alleged promise made by the Berkshire Defendants to Mr. Flaherty.  App. 21–22 R. Doc. 1, at 12–13, ¶¶ 85–92.

On June 28, 2024, the Berkshire Defendants moved to dismiss the Complaint with prejudice.[7]  R. Doc. 20, at 1; App. 24 R. Doc. 21, at 1.

a.      The District Court's First Order of Dismissal

On October 29, 2024, the District Court dismissed the claims against the Berkshire Defendants with prejudice (the "First Dismissal Order").  AplntAdd. 2 App. 93 R. Doc. 36, at 2.

First, the District Court found that Mr. Flaherty's self-alleged trespass was "fatal to all of [Mr.] Flaherty's intentional tort claims."  AplntAdd. 13 App. 104 R. Doc. 36, at 13.  Because Mr. Flaherty alleged that he "remained" at the Annual Meeting after agents of Berkshire Hathaway—the party with legal possession of the Arena—"told him to leave," the District Court held that two things were "apparent on the face of the Complaint": (1) "[Mr.] Flaherty became a trespasser" at common law "when he 'remained upon premises in possession of another without the express or implied consent of the possessor'" (*id.* (citing *Kenney v. Barna*, 341 N.W.2d 901,

---

[7]      In opposition to the Berkshire Defendants-Appellees' Motion to Dismiss, Plaintiffs-Appellants submitted the Declaration of Peter T. Flaherty which contained factual allegations not included in the Complaint.  R. Doc. 26-3.  Defendants-Appellees moved to strike the Declaration, which the District Court granted. AplntAdd. 10 App. 101 R. Doc. 36 at 10.

902 (Neb. 1983)); and (2) the "Berkshire Defendants had the right to eject [Mr.] Flaherty by force" (*id.*). The District Court found that the "privilege to eject" Mr. Flaherty defeated his intentional tort claims as matter of law. *Id.*

Second, the District Court dismissed Mr. Tovar's claims for assault (Count VI), battery (Count VII), and false imprisonment (Count VIII). It found that Mr. Tovar is "mentioned only three times in the factual allegations" of the Original Complaint: (1) he planned to accompany Mr. Flaherty to the Annual Meeting; (2) he did accompany Mr. Flaherty to the Annual Meeting; and (3) Mr. Tovar was "physically prevented" from accompanying Mr. Flaherty during his arrest. AplntAdd. 21 App. 112 R. Doc. 36, at 21. Without "additional factual allegations," Mr. Tovar's claims were dismissed as "mere legal conclusions and recitation of the elements of the causes of action." *Id.* (citation omitted). Specifically, the District Court found that Mr. Tovar failed to plead any threat (as required to plead assault), failed to plead any facts about the purportedly "offensive" "contact" (as required to plead battery), and failed to plead that Mr. Tovar was confined (as required to plead false imprisonment). AplntAdd. 21–22 App. 112–113 R. Doc. 36, at 21–22.

Finally, the District Court dismissed NLPC and Mr. Flaherty's promissory estoppel claim (Count IX) because they failed to plead that they detrimentally relied on any promise. It reasoned that when Plaintiffs-Appellants flew to Omaha to present their proposal at the Annual Meeting, they "did not do so in reliance on a

promise" but because they were required to by SEC regulations. AplntAdd. 23 App. 114 R. Doc. 36, at 23.

b. <u>Plaintiffs-Appellants Seek Leave to File the Amended Complaint</u>

On January 14, 2025, Plaintiffs-Appellants filed a motion for leave to file an Amended Complaint. R. Doc. 53. The Berkshire Defendants-Appellees opposed the motion because it asserted the same deficient claims that had already been dismissed and added no new factual allegations against them. R. Doc. 54, at 4–5. The Magistrate Judge granted leave to file (R. Doc. 55), but recognized the Berkshire Defendants-Appellees' opposition to "relitigating claims that have already been dismissed" and told Plaintiffs-Appellants she would "*sua sponte* recommend" the previously dismissed claims against the Berkshire Defendants-Appellees again be dismissed for the reasons articulated in the First Dismissal Order (R. Doc. 54, at 3).

c. <u>Plaintiffs-Appellants File the Amended Complaint</u>

On February 14, 2025, Plaintiffs-Appellants filed the Amended Complaint which was "identical to the original complaint but names the Doe Defendants as Dan Clark and Chris Thompson." R. Doc. 55; App. 117 R. Doc. 56, at 1. The Magistrate Judge recommended the District Court dismiss the Berkshire Defendants for the reasons articulated in the First Dismissal Order. R. Doc. 57. Plaintiffs-Appellants

did not object. *Id.* On March 11, 2025, the District Court adopted the Magistrate Judge's recommendation and dismissed the Berkshire Defendants.[8] R. Doc. 63.

The Complaint was served on Defendant-Appellee Dan Clark on March 12, 2025. R. Doc. 64. He moved to dismiss the Complaint on April 16, 2025. R. Doc. 70. Plaintiffs-Appellants "did not file any timely opposition." AplntAdd. 34 App. 134 R. Doc. 71, at 4.

On August 8, 2025, the District Court adopted its prior order and dismissed the claims against Mr. Clark with prejudice. AplntAdd. 44 App. 114 R. Doc. 71, at 14.[9]

The District Court dismissed the claims against Chris Thompson because he was never served. AplntAdd. 43 App. 143 R. Doc. 71, at 13. Plaintiffs-Appellants

---

[8]    Plaintiffs-Appellants try to obfuscate their failure to object to the Magistrate Judge's recommendation that the Amended Complaint be dismissed by criticizing her recommendation as a "pointless exercise." Aplnt. Br. at 19. But, Plaintiffs chose to file an Amended Complaint identical to the original complaint and the trial court had to dispose of it. By failing to object to the Magistrate Judge's recommendation Plaintiffs-Appellants waived any appeal of her factual findings. *United States v. Camberos-Villapuda*, 832 F.3d 948, 951 (8th Cir. 2016).

[9]    The District Court dismissed the malicious prosecution (Count III), intentional infliction of emotional distress (Count IV), and promissory estoppel (Count IX) claims against Clark for additional reasons (AplntAdd. 35, 43 App. 135, 143 R. Doc. 71, at 5, 13), not addressed on appeal.

named Mr. Thompson as an Appellee, but do not appeal this order nor do Plaintiffs-

Appellants appear to have served Mr. Thompson with this appeal.

In Nebraska, a trespasser is "a person who enters or remain*s* upon premises in possession of another without the express or implied consent of the possessor." *Guzman v. Barth*, 552 N.W.2d 299, 301 (Neb. 1996). A person becomes a trespasser when he remains on property "when ordered to depart" by the property owner or party in possession of the property. *Maynard v. State*, 116 N.W. 53, 58 (Neb. 1908) ("[W]hen ordered to depart, he, failing to do so, became a trespasser."). Furthermore, in Omaha, the Request to Leave Ordinance (Omaha Mun. Ordinance § 20-155) makes it "unlawful for any person to fail or refuse to leave the property of another after being notified to leave by the owner, occupant or person in control thereof, or by his agent." Thus, a refusal to leave on request is both trespass at common law and a violation "akin to criminal trespass." App. 123 R. Doc. 56, at 7, ¶ 31.

A property owner[10] has the legal right, or privilege, to eject a trespasser using reasonable force. *Reed v. Chicago*, *B. & Q.R. Co.*, 120 N.W. 442, 444 (Neb. 1909) ("[The plaintiff] was a mere trespasser when he entered the caboose

---

[10] In Nebraska, a property owner includes the party with legal possession of the property; Berkshire Hathaway was in legal possession of the Arena during the time at issue. *See Lambert v. Holmberg*, 712 N.W.2d 268, 273–74 (Neb. 2006) (holding that under the law of trespass, a party may bring a trespass action if the party "ha[d] title to or legal possession of the land").

14

after having been refused passage on the train, and the defendant and its employees were authorized to use such reasonable force as was necessary to eject plaintiff from the train."). "A privileged act is generally defined as one that would ordinarily be tortious, but which, under the circumstances, does not subject the actor to liability." *Dion v. City of Omaha*, 973 N.W.2d 666, 687 (Neb. 2022).[11]

The District Court correctly determined that it "is apparent on the face of the Complaint that:" (1) Mr. Flaherty "became a trespasser" at common law when he "remained upon premises in possession of another without the express or implied consent of the possessor"; (2) the Berkshire Defendants-Appellees "had the right to eject Flaherty by force"; and (3) "Defendants' right to eject Flaherty" is fatal "to each of Flaherty's claims." AplntAdd. 37–38 App. 137–138 R. Doc. 71, at 7–8. On appeal, Plaintiffs-Appellants do not dispute that if

---

[11] Ordinarily, the existence of a justification is a question of fact that the defendant must prove." *Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 982–83 (8th Cir. 2008). "If an affirmative defense such as a privilege is apparent on the face of the complaint, however, that privilege can provide the basis for dismissal under Rule 12(b)(6)." *Id.* at 983.

Mr. Flaherty was a trespasser, Defendants-Appellees' right and privilege to eject him is fatal to all of his intentional tort claims (Counts I, II, III, IV &V).

The District Court's judgment dismissing Mr. Flaherty's intentional tort claims should be affirmed because Mr. Flaherty is a trespasser at common law and Defendants-Appellees had the right to eject him. Mr. Flaherty does not (and cannot) argue to the contrary. Indeed, Plaintiffs-Appellants' brief does not address Nebraska common law of trespass at all. Plaintiffs-Appellants' focus on "shareholder rights," Delaware corporate law, and federal securities law is misplaced because neither supersede Nebraska common law of trespass or the rights of Nebraska property owners to eject unwanted visitors. It has been settled in Nebraska for more than a century that a property owner can eject a disruptive individual from their property.

Mr. Tovar's intentional tort claims fare no better. The District Court dismissed his claims because they rested on mere legal conclusions and basic recitations of the elements of the causes of action. AplntAdd. 21–22 App. 112–113 R. Doc. 36, at 21–22. Rather than arguing that Plaintiffs-Appellants pled facts sufficient to prove three torts, Plaintiffs-Appellants ask this Court to watch a video to find sufficient facts, although those facts were not pled in the Complaint, not identified in the proceedings below, and not adjudicated by the District Court. The video does not substitute the short and plain statement of facts required by Rule 8.

16

It is Mr. Tovar's burden, not this Court's, to plead a claim for relief that is plausible on its face.

Finally, the District Court correctly dismissed NLPC and Mr. Flaherty's promissory estoppel claim. AplntAdd. 23 App. 113–114 R. Doc. 36, at 23. Although they argue that they incurred travel expenses to fly to Omaha to present a shareholder proposal, they did so because they were required by an SEC regulation to do so, not in reliance on a promise by Defendants-Appellees.

## ARGUMENT

## I. Standard of Review

This Court reviews the District Court's decision to dismiss the complaint pursuant to Rule 12(b)(6), *de novo*. *See Farm Credit Servs. of Am., FLCA v. Haun*, 734 F.3d 800, 803 (8th Cir. 2013). To survive a motion to dismiss a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 804 (quoting *Bradley Timberland Res. v. Bradley Lumber Co.*, 712, F.3d 401, 406 (8th Cir. 2013)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[T]hreadbare recitations of the elements of a cause of action, supported by mere conclusory statements" do not suffice. *Jones v. City of St. Louis*, 104 F.4th 1043, 1046 (8th Cir. 2024) (quoting *Iqbal*, 556 U.S. at 678).

## II. The District Court Correctly Found That Mr. Flaherty's Self-Pled Trespass Is Fatal To His Intentional Tort Claims As A Matter of Law

### a. The District Court Correctly Ruled That Mr. Flaherty Is a Trespasser Under Nebraska Common Law

In Nebraska, the right to enter or remain on private property is contingent on the property owner's continued "consent." *Guzman v. Barth*, 552 N.W.2d 299, 301 (Neb. 1996). Generally, once a guest is permitted to enter property, he can

remain on the property until the property owner revokes consent. *Cowperthwait v. Brown*, 117 N.W. 709, 712 (Neb. 1908) (holding that an invited guest was permitted to remain until the party in possession "ordered him to leave"). To trigger the guest's duty to depart, the property owner must provide the guest with notice. *Id.* A guest who remains on property despite notice of their duty to depart becomes a trespasser. Thus, common law trespass by refusing to leave can be established with: (a) a property owner or one in possession of property; (b) who communicates a duty to depart; and (c) refusal to leave. *See id.*

The District Court correctly found that the Complaint expressly pleads all three elements showing he was a trespasser. First, the Berkshire Defendants-Appellees were in possession of the Arena. AplntAdd. 37–38 App. 137–138 R. Doc. 71, at 7–8. Second, Mr. Flaherty alleges that he was ordered to leave multiple times by Security Guards he alleges were hired by Berkshire Hathaway. App. 122–123 R. Doc. 56, at 6–7; ¶¶ 27–30. Third, Mr. Flaherty refused to leave, was arrested for refusing to leave, and even made a YouTube video posted to the internet showing he refused to leave. AplntAdd. 11 App. 102 R. Doc. 36, at 11 ("[Plaintiffs] admit that [Mr. Flaherty] was asked to leave the shareholder meeting and 'remained due to the reasonable belief that he could stay.'"). Mr. Flaherty became a common law trespasser when he remained at the meeting after he was told to leave. AplntAdd. 13

App. 104 R. Doc. 36, at 13 (quoting *Kenney v. Barna*, 341 N.W.2d 901, 902 (Neb. 1983)).

Plaintiffs-Appellants complain that some case law precedent the District Court relied on is over 100 years old, but they do not dispute that the common law trespass principles "remain viable today." AplntAdd. 12 App. 103 R. Doc. 36, at 12. An unbroken chain of precedent lasting a century confirms that the right to eject a guest who refuses to leave is a bedrock principle of Nebraska property law that the District Court correctly applied here.

On appeal, Plaintiffs-Appellants do not brief and thereby concede that Mr. Flaherty is a trespasser under Nebraska common law[12] "because the issue was not developed in [their brief] as required by Federal Rule of Appellate Procedure 28(a)(9)(A)." *Rotskoff v. Cooley*, 438 F.3d 852, 854 (8th Cir. 2006); *Davis v. City of Little Rock*, 122 F.4th 326, 332 n.2 (8th Cir. 2024) (holding any argument not raised in the opening brief is waived). Rather than contend with settled Nebraska common law, Mr. Flaherty's appeal is based on misdirection and an issue not

---

[12] Plaintiffs-Appellants, in passing, argue that the District Court improperly relied on Nebraska common law to interpret § 20-155. They contend that § 20-155 does not apply to Mr. Flaherty because he had permission to enter the Arena. But § 20-155 is irrelevant to whether or not Mr. Flaherty was a common law trespasser and, even if it were relevant, the District Court properly found he violated that ordinance. *See* Section II.C.

litigated or necessary to the District Court's decision. He claims he did not self-allege that he violated Omaha Mun. Ordinance § 20-154, which makes it a crime for "any person purposely or knowingly to *enter . . .* the property of another person without being invited, licensed or privileged to do." (emphasis added). Therefore, Mr. Flaherty argues he did not violate § 20-154 and was not a trespasser.

The District Court did not need to find Mr. Flaherty was a criminal trespasser under § 20-154 and did not do so. Rather, the District Court's opinion was rooted in the fact the Complaint pleads Mr. Flaherty was a common law trespasser. AplntAdd. 12–13 App. 103–104 R. Doc. 36, at 12–13.

> b. <u>Mr. Flaherty's Self-Alleged Violation of Omaha's Request to Leave Ordinance Provides an Independent Basis to Affirm Dismissal of Mr. Flaherty's Tort Claims</u>

The District Court also correctly observed that Mr. Flaherty's self-pled trespass was also a violation of the Request to Leave Ordinance (§ 20-155) (AplntAdd. 18–19 App. 109–10 R. Doc. 36, at 18–19), which is "akin to criminal trespass" according to the Complaint (App. 123 R. Doc. 56 at 7, ¶ 31). Mr. Flaherty cannot and does not dispute that he "refuse[d] to leave" after "being notified to do so" the "person in control" of the Arena or "his agent." *State v. Goering*, Nos. A-93-1128, A-93-1129, A-93-1130, A-93-1133, 1994 WL 585763, at *5 (Neb. Ct. App. Oct. 25, 1994) ("It is undisputed in the record that the defendants were notified by the representative of the medical center and by the police to leave.

They did not leave; therefore they violated the ordinance."). Thus Mr. Flaherty does not and cannot dispute that his conduct violated the plain text of the Request to Leave Ordinance.

Consistent with the Request to Leave Ordinance, the Omaha Police Department issued policies permitting property owners and their agents to "request police to have the trespasser removed." Aplnt. Br. at 22. Defendants-Appellees cannot be liable in tort for peaceably exercising their property rights consistent with those guidelines. *Noble Sys. Corp. v. Alorica Cent., LLC.*, 543 F.3d 978, 983 (8th Cir. 2008) ("Generally, a defendant's actions are justified if it pursues its legal rights via legal means."). Because Mr. Flaherty violated the Request to Leave Ordinance, Defendants-Appellees' actions to eject him were privileged.

Plaintiffs-Appellants raise irrelevant arguments to escape the obvious conclusion that they pled a violation of Omaha's Request to Leave Ordinance. First, Plaintiffs-Appellants argue that the Request to Leave Ordinance (§ 20-155) applies only to a person "who is otherwise a trespasser" under § 20-154, which makes it a crime for "any person purposely or knowingly to *enter* . . . the property of another person without being invited, licensed or privileged to do." (emphasis added). Aplnt. Br. at 21 (quoting Omaha Mun. Code § 20-154). This is contrary to the plain text of § 20-155 which applies to "*any person*," not any trespasser. *Cf. State ex rel. Belker v. Bd. of Educ. Lands & Funds*, 171 N.W.2d 156, 160 (Neb. 1969) ("It is not

22

the province of the court to read into a statute something omitted from it by the Legislature."). Case law does not suggest that a violation of § 20-155 requires a predicate violation of § 20-154. To the contrary, case law demonstrates that "[i]n order to be guilty of failure to leave pursuant to Section 20-155 of the laws of the City of Omaha" the party must only have "failed or refused to leave the [property] after being notified to do so by an authorized person." *Villalta v. Waller*, No. 8:04CV386, 2005 WL 8176137, at *2 (D. Neb. Nov. 30, 2005) (internal citation omitted). Further, Plaintiffs-Appellants' reading of the ordinance is illogical, because it is the request to leave that has been refused which then makes someone a trespasser under the Request to Leave Ordinance.

Plaintiffs-Appellants' brief also spills much ink on the Omaha Police Department's policies, which permit officers to enforce trespassing laws on those who have violated various trespassing ordinances. Aplnt. Br. at 22–23. They argue that because the policies only address enforcement against "trespassing persons," § 20-155 can only be enforced against those who have already violated § 20-154. *Id.* at 23–24. The policies do not support Plaintiffs-Appellants' tortured reading. The police department policies clearly presume that police will only be called to enforce Request to Leave violations against those who have already refused to leave—that is, trespassing persons like Mr. Flaherty. The Request to Leave Ordinance is considered a trespassing law, confirmed by the fact it is included in the

trespassing law enforcement policy.  At common law, those who refuse to leave on request are trespassing persons.  *See* Section II.A.  Plaintiffs-Appellants expressly pled Mr. Flaherty was charged with a violation akin to criminal trespass.  The Omaha Police Department confirmed as much by issuing the Report on the Issuance of the Ban and Bar Letter which identifies Mr. Flaherty as a trespasser.  ApleeAdd. 1 App. 147 R. Doc. 26-1, at 1.  In all, the plain text of the ordinance, Nebraska common law, the Omaha Police Department Policies, the judgment of the Omaha police officer, and the Complaint are all in accord:  Mr. Flaherty was subject to § 20-155 and a trespassing person by refusing to leave.  Defendants-Appellees cannot be liable for summoning a police officer to report an ongoing trespass or crime.

Plaintiffs-Appellants' argument that the Omaha police officer violated Omaha Police Department policies (Aplnt. Br. at 23–25) was not raised below, and there are no facts to support it in the Complaint.  Even if the argument was not waived, the District Court found, and Plaintiffs-Appellants do not dispute, that the officer who arrested Mr. Flaherty was acting in a "law enforcement capacity . . . pursuant to his or her public position."  AplntAdd. 39 App. 139 R. Doc. 71, at 9.  It is well-established that courts presume that public officers "have properly discharged their official duties."  *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (citation omitted).  The District Court correctly declined Plaintiffs-Appellants' invitation to

assume that the officer made an unlawful arrest, and that Defendants-Appellees should be liable for unpled police misconduct.

> c. The District Court Properly Rejected Mr. Flaherty's Argument That He Was A "Special Invitee" Immune From Nebraska Trespass Law

Mr. Flaherty asserts he is a "special invitee" with "inalienable rights under state and federal law" to be at the Berkshire Hathaway Annual Meeting, notwithstanding the property owner's request that he leave. Aplnt. Br. at 18. Plaintiffs-Appellants do not cite any authority establishing this "special invitee" status that somehow confers a privilege to trespass.[13] There is no such privilege at Nebraska common law.[14]

Plaintiffs-Appellants' argument that they were invitees "irrespective of [Defendant'] consent" (Aplnt. Br. at 25) is inconsistent with well-settled Nebraska law. A person cannot be an invitee without consent. *See Wright v. Preston Res., Inc.*, 639 N.W.2d 149, 154 (Neb. Ct. App. 2002) ("An invitee is a person who goes on the premises of another in answer to the express or implied invitation of the owner

---

[13] Other than the Dismissal Order that rejected Plaintiffs-Appellants' "special invitee" argument, the phrase "special invitee" appears in one other decision available on LexisNexis, which is inapposite. *See Crosby v. State*, 696 S.W.2d 388 (Tex. Ct. App. 1985) (affirming conviction of unlawful possession of a controlled substance).

[14] Nor would a privilege permit trespass in violation of § 20-155.

or occupant on the business of the owner or occupant or for their mutual advantage."). And under well-established law, consent can be revoked like it was here. Plaintiffs-Appellants conceded as much below. R. Doc. 25, at 10 ("An invitee may remain on the premises until asked to 'leave.'"); *cf. United States v. Molsbarger*, 551 F.3d 809, 811–12 (8th Cir. 2009) ("Disruptive, unauthorized conduct in a hotel room invites intervention from management and termination of the rental agreement."). Refusing to leave the premises after consent has been revoked is trespass. *See Johnson v. McCarver*, 942 F.3d 405, 410 (8th Cir. 2019) ("[Plaintiff's] refusal to leave after agents of the club revoked his license to remain established arguable probable cause to believe that he trespassed."). Defendants-Appellees cannot be liable for summoning the police to respond to a trespasser. The Nebraska Supreme Court has cautioned against tort liability that "destroy[s] with fear and threats the recognized right and duty of the public to give information to law enforcement officers, which is a most effective instrument in the administration of criminal justice." *Edgar v. Omaha Pub. Power Dist.*, 89 N.W.2d 238, 244–45 (Neb. 1958).

Mr. Flaherty's additional assertion that he had a privilege to trespass because NLPC owns common stock of Berkshire Hathaway is also baseless. Delaware corporate law or SEC regulations may give a shareholder (or their representative)

the opportunity to attend a shareholder meeting.[15]  But, Delaware corporate and federal securities laws do not permit (let alone require a property owner to allow) trespassing in Nebraska.  Plaintiffs-Appellants cite no case support for their radical argument.  Indeed, Mr. Flaherty's claimed right to make a shareholder proposal is expressly subject to "state law procedures for attending the meeting and/or presenting [the] proposal."  17 C.F.R. § 240.14a-8; Neb. Rev. Stat. § 21-260 ("The chairperson . . . shall have the authority to establish rules for the conduct of the meeting.").  It did not exempt Mr. Flaherty from state law or strip Mr. Buffett of his authority to preside over the meeting. Under Plaintiffs-Appellants' fictional privilege, a shareholder could never be removed from an annual meeting, no matter how disruptive, inappropriate or dangerously they acted.  That is plainly not the law.  Indeed, Mr. Flaherty himself told the Security Guards Mr. Buffett had the authority to rule.  App. 122–23 R. Doc. 56, at 6–7, ¶ 28.  There has never been a Delaware corporate or federal securities law claim in this case because there is no merit to Plaintiffs-Appellants' suggestion that Mr. Flaherty had a Delaware or federal right to trespass in Nebraska.[16]

---

[15]  NLPC, the only Plaintiff-Appellant alleged to be a shareholder, still had a representative at the Shareholder Meeting: Mr. Tovar, who alleges that being permitted to remain at the meeting is false imprisonment.

[16]  Mr. Flaherty filed a complaint with the SEC two years ago. https://nlpc.org/wp-content/uploads/2023/12/NLPC-SEC-Complaint-12-19-23.pdf

At bottom, if Mr. Flaherty believes he was not afforded his rights as a Berkshire Hathaway shareholder (or a representative of one), he has remedies to vindicate those rights.[17]  Mr. Flaherty's invented "special invitee" status based on his view of "shareholder rights" does not override well-established Nebraska law that a property owner has the right to eject a trespasser whether or not he was initially an invitee.  Plaintiffs-Appellants' radical and incorrect view of the law certainly did not give Mr. Flaherty license to ignore instructions of Omaha police officers to leave the Arena.

## III.  The District Court Correctly Dismissed Mr. Tovar's Intentional Tort Claims (Counts VI, VII & VIII)

The District Court dismissed Mr. Tovar's intentional tort claims because the Complaint did not plead sufficient facts to state a claim for battery, assault, or false imprisonment.  AplntAdd. 21–22 App. 112–113 R. Doc. 36, at 21–22.  Plaintiffs-

---

(last visited December 19, 2025).  The SEC did not find his right to present a shareholder proposal infringed.  App. 11 R. Doc. 21, at 11.  For good reason: Mr. Flaherty submitted a corporate governance proposal and promised to share "expert perspectives" from Deloitte.  App. 75 R. Doc. 22-2, at 17.  Instead, his presentation at the Annual Meeting was about transgender people, the "virus" of "philanthropy" and "sex crimes."  App. 86–87 R. Doc. 22-3 at 277:18–25, 278:12–17.

[17]     Mr. Flaherty casts his shareholder presentation in first amendment terms like "viewpoint discrimination."  Aplnt. Br. at 34.  But the SEC regulation on which he relies does not "create an open forum for shareholder communication."  *Trinity Wall St. v. Wal-Mart Stores, Inc.*, 792 F.3d 323, 336 (3d Cir. 2015).

Appellants do not dispute that the sum total of their allegations with respect to Mr. Tovar are: (1) Mr. Tovar planned to accompany Mr. Flaherty, (2) Mr. Tovar actually did accompany Mr. Flaherty, and (3) Mr. Tovar tried to accompany Mr. Flaherty to his arrest and detention but was prevented from doing so by the Security Guard Defendants. *Id.* It is undisputed that these allegations are insufficient to plead assault, battery and false imprisonment as a matter of law.

Instead, Plaintiffs-Appellants ask this Court to watch the video of the events at issue to adjudicate the sufficiency of facts not pled in the Complaint, not presented to the District Court, and not mentioned by the District Court. Plaintiffs-Appellants have waived this argument. *Saadoon v. Barr*, 973 F.3d 794, 805 n.7 (8th Cir. 2020) ("[W]e do not decide issues that the district court did not adjudicate.").

Plaintiffs-Appellants cannot rely on a video to substitute for a short and plain statement demonstrating a basis for relief. Rule 8(a) requires a pleading to contain a "short and plain statement of the claim showing that [the plaintiff] is entitled to relief." Rule 12(b)(6) requires the plaintiff to plead factual matter sufficient to render that claim plausible. Here, Plaintiffs-Appellants plead only a "recitation of the elements of a cause of action," but fail to plead a claim for relief under Rule 8(a), let alone a plausible claim under Rule 12. *Zink v. Lombardi*, 783 F.3d 1089, 1103 (8th Cir. 2015). They cannot cure that defect by asking this Court to review a video for factual matter to support a claim they have not clearly stated. Initially, a

statement clearly contemplates written words articulating a claim for relief. A video is not, without more, a statement. *Wright v. City of Ponca City*, No. CIV-21-1158-HE, 2022 U.S. Dist. LEXIS 141987, at *4 (W.D. Okla. July 28, 2022) ("Incorporating a video clip by reference does not avoid a claimant's obligation to make a 'short and plain statement' of the basis for claim."); *Simon v. Gladstone*, No. 23-1431, 2025 U.S. App. LEXIS 5254, at *6 (4th Cir. Mar. 6, 2025) ("We conclude that the court did not abuse its discretion because the hyperlinks and video in the complaint contravene foundational pleading standards required under Rule 8."). Moreover, Plaintiffs-Appellants improperly ask this Court to review a video to discover a claim for relief, draft a short and plain statement describing each claim, and then find facts sufficient to render the claims plausible on the face of the Complaint.

Mr. Tovar's battery claim demonstrates exactly why a written statement is necessary. Mr. Tovar claims the video shows he was touched on the left arm. Aplnt. Br. at 35. In the District Court, however, Mr. Tovar argued only that he was touched on the chest. R. Doc. 25 at 25–26. The District Court was not required to cobble together a short and plain statement to determine Mr. Tovar's battery, let alone find its interpretation to be plausible. Even if this Court were to review a different battery claim than that presented to the District Court (it should not), Mr. Tovar does not plead any facts proving the "offensive contact" necessary for battery.

As before, this is nothing more than an "unadorned, the-defendant-harmed me accusation." AplntAdd. 22 App. 113 R. Doc. 36, at 22 (quoting *Kulkay v. Roy*, 873 F.3d 637, 642 (8th Cir. 2017)). *See, e.g.*, *Bell v. Dow Chem. Co.*, No. 21-326-SDD-SDJ, 2022 WL 1221639, at *28 (M.D. La. Mar. 11, 2022) ("Plaintiffs do not plead any facts in support of their conclusory allegations of the elements of battery.").

Even the characterization of the video in Plaintiffs-Appellants' brief is not sufficient to plead Mr. Tovar's claims. The video does not show that any Defendant-Appellee "threatened to harm and touch" him "in a harmful or offensive manner" as necessary to prove assault. *See Bissonette v. Luskey*, No. Civ. 02-335 ADM/AJB, 2003 WL 1700466, at *3 (D. Minn. Mar. 27, 2003) (holding an "assault claim must fail" where "Plaintiff has alleged no direct threats and has not identified when she feared imminent physical harm"); *Pinkston v. Bd. of Educ. of City of Chicago*, No. 19 CV 6477, 2023 WL 6392302, at *6 (N.D. Ill. Oct. 2, 2023) (holding a "[p]laintiff has not plausibly stated a claim for assault" when the "allegations comprise nothing more than a recital of the elements of an assault claim supported by mere conclusory statements").

Moreover, Mr. Tovar has waived any right to appeal his battery claim. In the proceedings below, Mr. Tovar argued he was battered by being touched on the chest, although that contact was not pled in the Complaint. He does not brief this purported contact on appeal and therefore has waived any appeal thereof. *See Davis*, 122 F.4th

31

at 332 n.2 (holding that any argument not raised in the opening brief is waived).

Mr. Tovar argues now he was battered by being grabbed on the left arm, but he

similarly waived this argument by failing to present it to the District Court.  *See*

*Saadoon*, 973 F.3d at 805 n.7.

Mr. Tovar was not falsely imprisoned either.  He was free to sit down, leave

the Arena, or go to his hotel room.  He was *not* free to unlawfully accompany, or

follow, Mr. Flaherty during Mr. Flaherty's arrest by the police.  Mr. Tovar simply

was not falsely imprisoned as a matter of law.  *Cf. Dangberg v. Sears, Roebuck &*

*Co.*, 252 N.W.2d 168, 171 (Neb. 1977) (reiterating that false imprisonment requires

"placing" the plaintiff "in a position" where he may not go where he "may lawfully

go") (quoting *Schmidt v. Richman-Gordman, Inc.*, 215 N.W.2d 105 (Neb. 1974)).

## IV. The District Court Properly Dismissed Mr. Flaherty's and NLPC's Promissory Estoppel Claim

To plead a promissory estoppel claim under Nebraska law, a plaintiff must

show "(1) a promise that the promisor should have reasonably expected to induce

the plaintiff's action or forbearance, (2) the promise did in fact induce the plaintiff's

action or forbearance, and (3) injustice can only be avoided by enforcing the

promise." *Weitz Co., LLC v. Hands, Inc.*, 882 N.W.2d 659, 668 (Neb. 2016).

The District Court correctly found that the Complaint only plausibly pled one

communication resembling a promise between Defendants-Appellees and Plaintiffs-

Appellants—a May 1, 2023 email from a Berkshire Hathaway representative to Mr. Flaherty with instructions for making a presentation at the Annual Meeting. AplntAdd. 23 App. 114 R. Doc. 36, at 23. Plaintiffs-Appellants alleged they relied on that promise to buy accommodations to travel to Omaha. *Id.* The District Court found that because Plaintiffs-Appellants were legally required to attend the shareholders meeting—as of October 2022 when they submitted the proposal— Plaintiffs-Appellants did not travel to Omaha a year later "in reliance on a promise by the Berkshire Defendants." *Id.*; 17 C.F.R. §§ 240.14a-8(h)(1) (providing that a shareholder "must attend the meeting to present the proposal").

On appeal, Plaintiffs-Appellants offer nothing to undermine the District Court's correct reading of the Complaint. Instead, Plaintiffs-Appellants hair split and now contend they were promised a chance to present not just their proposal, but "the full content of their proposal" as published on Plaintiff NLPC's website. Aplnt. Br. at 37. Plaintiffs-Appellants cannot post content to their own website and call it a promise made by Defendants-Appellees. *See Fast Ball Sports, LLC v. Metro. Ent. & Convention Auth.*, 835 N.W.2d 782, 793 (Neb. Ct. App. 2013) (rejecting claim that plaintiff could have reasonably relied on a promise for actions taken before the alleged promise was even made).

In any event, the District Court is still correct that Plaintiffs-Appellants were legally obligated to travel to Omaha when they made a proposal and therefore cannot

33

have relied on anything Defendants-Appellees actually did or said to their detriment. Plaintiffs-Appellants' distinction between being promised the chance to make "a proposal" or a "full proposal" is one without a legal difference. Plaintiffs-Appellants' were legally required to present their proposal—and incur all travel expenses contingent to that proposal—as of October 2022. It is clear that Plaintiffs-Appellants did not incur the costs of traveling from Virgina to Omaha "in reliance on a promise by the Berkshire Defendants." Aplnt Add. 23 App. 114 R. Doc. 36, at 23. There is no detrimental reliance here. *See Lovell v. City of Kearney*, 263 N.W.2d 867, 868 (Neb. 1978) (holding there is "no estoppel" unless Plaintiffs-Appellants changed their position in "reliance upon [Defendant-Appellee's] statements or conduct").

Significantly, Plaintiffs-Appellants were not, in fact, promised by Defendants-Appellees an opportunity to make the off-topic and off-color remarks Mr. Flaherty made and which led to his ejection from the Arena. Any "public ignominy" Mr. Flaherty allegedly suffered due his arrest being reported in the press (Aplnt. Br. at 37) was the result of his own behavior at the Arena and when he posted video of his arrest multiple times on his YouTube page. It is also irrelevant to his claims in this case.

**V.**     **The Judgment For Defendant Clark Should Be Affirmed For The Additional Reason That Plaintiffs Did Not Oppose His Motion To Dismiss**

This Court should affirm the dismissal of claims against Mr. Clark because Plaintiffs-Appellants "did not file any timely opposition" to his Motion to Dismiss the Amended Complaint.  AplntAdd. 34 App. 134 R. Doc. 71, at 4.  This Court should not "excuse [Plaintiffs-Appellants'] failure to oppose appellee's motion to dismiss." *Penn v. Iowa State Bd. of Regents*, 999 F.2d 305, 307 (8th Cir. 1993); *see Fuller v. Sec'y of Def. of the United States*, 30 F.3d 86, 88 (8th Cir. 1994) (declining to review district court grant of Defendant's motion to dismiss because Plaintiff failed to oppose the motion); *Rivera v. Bank of Am., N.A.*, 993 F.3d 1046, 1051 (8th Cir. 2021) (holding a plaintiff had waived an argument by failing to raise it in opposition to the defendant's motion to dismiss).

**VI.**     **The Judgment For Defendant Thompson Should Be Affirmed For The Additional Reason That Plaintiffs Did Not Serve Him With A Summons And Complaint Pursuant to Rule of Civil Procedure 4**

In the October 2024 Dismissal Order, the District Court ordered Plaintiffs-Appellants to serve the Doe Defendants in seven days.  *See* AplntAdd. 25 App. 116 R. Doc. No. 36, at 25.  After multiple extensions (R. Docs. 37, 38), service was never effected on Chris Thompson.  *See* R. Doc. 65.  The District Court properly dismissed all claims against Chris Thompson for lack of service, finding "no good cause to extend the deadline further for Plaintiffs to serve Thompson."  AplntAdd. 43 App.

35

143 R. Doc. No. 71, at 13. Plaintiffs do not brief, and thus have waived appeal of, dismissal. *See Mungai v. Univ. of Minn.*, 141 F.4th 959, 963 (8th Cir. 2025).

Even if the issue had not been waived, this Court should affirm dismissal of claims against Mr. Thompson for failure to effect service. *See Hoffmann v. United States*, 21 F. App'x 528, 529 (8th Cir. 2001) (per curiam) (unpublished opinion) (holding that failure to serve under Rule 4(m) warranted *sua sponte* dismissal); *McReynolds v. Glenn*, 753 F. App'x 426, 426–27 (8th Cir. 2019) (per curiam) (unpublished opinion) ("We conclude that the court was required to dismiss [defendant] for failure to serve.").

## <u>CONCLUSION</u>

For the reasons set forth above, the Judgment of the District Court should be affirmed.

Dated: December 24, 2025

Respectfully submitted,

*/s/ Bryce L. Friedman*
BRYCE L. FRIEDMAN
MEREDITH KARP
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017
Tel: (212) 455-2000
bfriedman@stblaw.com
meredith.karp@stblaw.com

and

TARA A. STINGLEY
ISAIAH J. FROHLING
Cline Williams Wright Johnson &
Oldfather, LLP
12910 Pierce St., #200
Omaha, NE 68144
Tel: (402) 955-2441
tstingley@clinewilliams.com
ifrohling@clinewilliams.com

*Attorneys for Defendants-Appellees*

# CERTIFICATE OF COMPLIANCE

      1.     This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 7,525 words.

      2.     This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Times New Roman font.

*/s/ Bryce L. Friedman*

*Attorney for Defendants-Appellees*