NO. 25-2759

IN THE
UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

NATIONAL LEGAL AND POLICY CENTER, et al.,
Plaintiffs-Appellants,

v.

BERKSHIRE HATHAWAY, INC., et al.,
Defendants-Appellees.

ON APPEAL FROM THE U.S. DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

REPLY BRIEF OF PLAINTIFFS-APPELLANTS
NATIONAL LEGAL AND POLICY CENTER,
PETER T. FLAHERTY, AND JAMES R. TOVAR

Jeffrey E. McFadden
LAW OFFICES OF
JEFFREY E. MCFADDEN, LLC
312 Prospect Bay Drive East
Grasonville, MD 21638
Phone: (443) 272-4737
jmcfadden@jmcfaddenlaw.com

*Counsel for Plaintiffs-Appellants*

# TABLE OF CONTENTS

TABLE OF CONTENTS ..............................................................................................i

TABLE OF AUTHORITIES ........................................................................................ii

ARGUMENT   ...................................................... ......................................... 1

     I.     This Is Not An Appeal From a Motion for Summary Judgment……..1

     II.    Defendants-Appellees' Trespass Theory Cannot Be Resolved On the Pleadings and Does Not Bar Plaintiffs-Appellants' Tort Claims..…..8

          A.    The Amended Complaint Plausibly Alleged Invitation and Privilege to Attend and Present at the Shareholders Meeting…9

          B.    Even If Plaintiffs-Appellees' Rights To Attend and Present at the Meeting Were Not Absolute, the Question Of Whether They Exceeded the Scope of Their Privilege or License To Do So Is a Question of Fact That Could Not Be Resolved On a Motion To Dismiss……..…………...………………….…..……12

     III.   Plaintiffs-Appellants Stated a Claim For Promissory Estoppel......... 12

     IV.   Appellees' Assertion That the District Court Gave No Consideration To the Video Establishing Mr. Tovar's Claims For Assault, Battery, and False Imprisonment Is Plainly Wrong and Warrants *De Novo* Review Of the Video By This Court.................................................. .18

CONCLUSION   ...................................................................................... 19

CERTIFICATE OF COMPLIANCE ................................................................. A

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................1

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)........................................................1

*Johnson v. TCOM Systems, Inc.*, 1989 WL 518870 (D.D.C. Dec. 19, 1989)…10-11

*Kenney v. Barna*, 215 Neb. 863 (1983)…………………………...………………13

*Malolepszy v. Central Market*, 143 Neb. 356 (1943)…………………………….…13

*Matter of Calamity Jane's, Inc.*, 22 B.R. 5, 6 (D.N.J. 1982)..................................12

*Miller v. Redwood Toxicology Lab, Inc.*, 688 F.3d 928 (8th Cir. 2012)......................2

*Skinner v. Ogallala Public School Dist. No. 1*, 262 Neb. 387 (2001) ....................13

*Steinberg v. American Bantam Car Co.*, 76 F. Supp. 426 (W.D. Pa. 1948) ...........11

*Terminiello v. City of Chicago*, 337 U.S. 1 (1949). ................................................5

*Young v. City of St. Charles, Mo.*, 244 F.3d 623 (8th Cir. 2001)................................1

**Rules**

Fed. R. Civ. P. 8.....................................................................................................1

Fed. R. Civ. P. 12...................................................................................................1

**Regulations**

17 C.F.R. § 240.1-8(h)(1)........................................................................................6

**Treatises**

5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2004) ................................................................................2

**ARGUMENT**

## I. THIS IS NOT AN APPEAL FROM A MOTION FOR SUMMARY JUDGMENT.

This appeal arises from the District Court's granting of two motions to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Thus the issue, and the only issue, squarely before the District Court was whether the allegations in Plaintiffs-Appellants' Amended Complaint constituted a "short and plain statement of the claim showing that the [Plaintiffs/Appellants were] entitled to relief;" Fed. R. Civ. P. 8(1)(2); and contained "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)).

In conducting that analysis, the District Court, like this Court on *de novo* review, was required to accept the allegations in the Amended Complaint as true and draw all reasonable inferences from those allegations in Plaintiffs-Appellants' favor. *Young v. City of St. Charles, Mo.*, 244 F.3d 623, 627 (8th Cir. 2001). The District Court was limited to consideration of the allegations in the Amended Complaint and "'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is

1

unquestioned' without converting the motion into one for summary judgment."

*Miller v. Redwood Toxicology Lab, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012)

(quoting 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and*

*Procedure* § 1357 (3d ed. 2004).

But rather than confining their arguments to the sufficiency of the

allegations in the Amended Complaint and the few limited additional matters

delineated in *Miller*, Defendants-Appellees make up new facts through nothing

more than their own *ipse dixit* either for the purpose of 1) denying or challenging

the truthfulness or accuracy of the Amended Complaint's allegations or 2) to fill in

factual gaps necessary to bolster their legal arguments. These made-up or

unsupported facts are as follows:

- **Plaintiff-Appellant Flaherty was "disruptive."** Appellees' Brief

  ("Appellees' Br.") at 1 ("Plaintiff-Appellant Peter Flaherty is a

  trespasser who disrupted the annual shareholder meeting of

  Defendant-Appellee Berkshire Hathaway, Inc."); 27 ("Under Plaintiff-

  Appellants' fictional privilege, a shareholder could never be removed

  from an annual meeting no matter how disruptive, inappropriate or

  dangerously they acted").

  Nothing in the Amended Complaint, nor in the other documents or

video the District Court was permitted to consider, come close to establishing this "disruption" assertion *as a pleaded fact*.[1] Rather this "fact" was manufactured by Defendants-Appellees to support their argument that "[i]t has been settled in Nebraska for more a century that a property owner can eject a disruptive individual from their property." *Id.* at 16. They now find it necessary to depart from their position in the District Court that a property owner has an unconditional right to ask a privileged licensee on the property to leave, and now concede in their brief, as we further show below in Part II, that because Messrs. Flaherty and Tovar were granted a license to attend the shareholders meeting, and, moreover, were privileged to be there by dint of shareholder rights, there must be a credible basis to revoke such a license as a predicate to asking the licensee to leave. And whether such a credible basis existed at the time is a question of fact that cannot be resolved on a motion to dismiss. Yet Defendants-Appellees treat Mr. Flaherty's alleged disruptiveness, like the other "facts" discussed in this Part I, as an

---

[1] It is for this very reason that Defendants-Appellees' repeated assertion that Mr. Flaherty self-pleaded his own trespass holds no water. *See* Part II.B, below.

undisputed fact, as if this appeal were from the granting of a motion for summary judgment.

- **Mr. Flaherty was also disruptive because he was warned to "stay on topic" and did not.** Appellees' Br. at 5-6. Here Defendants-Appellees employ some subtle sleight of hand to conflate the statements of the Berkshire-Hathaway employee standing next to Mr. Flaherty with those of Defendant-Appellee Warren Buffet himself. Applee.Br. at 5. Missing from this rather (to put it kindly) incomplete recitation of the allegations is the fact that when warned to stay on topic, Mr. Flaherty said to the person standing next to him, "You're not going to censor what I say, ma'am. I'm very sorry. And I'll appeal to the chair that I be allowed to continue," to which Mr. Buffet replied, "You may continue, but you're under a three-minute limitation." 87 App., R. Doc. 22-3 at 278. Mr. Buffett said nothing about staying on topic, and the fact that he did not limit the substance of Mr. Flaherty's remarks but only the time allotted constituted a promise to Mr. Flaherty that he could continue to deliver his remarks without censorship, a promise on which he relied and which serves as one basis for his and Mr. Tovar's promissory estoppel claim. *See* Part

4

III below. In addition, when Mr. Flaherty was forcibly removed from the meeting, Mr. Buffett responded to the merits of Mr. Flaherty's remarks at length, illustrating yet again the bedrock First Amendment principle that the constitutional response to speech one does not like is not censorship, but counter-speech.[2] And the fact that Mr. Buffett chose to respond to the merits of Mr. Flaherty's remarks strongly militates against the assertion that those remarks were disruptive. In any event, and as set forth above, the question is one of fact that cannot be resolved on a motion to dismiss.

- **The police officer witnessed the Security Guards ask Mr. Flaherty to leave.** Appellee's Br. at 6-7 and n.5. For this "pleaded fact," Defendants-Appellees rely solely on the video, which, the parties

---

[2] In *Terminiello v. City of Chicago*, 337 U.S. 1 (1949), the Supreme Court declared that "a function of free speech under our system of government is to invite dispute. It may indeed serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger." *Id.* at 4. In other words, "disruptive" speech is constitutionally protected and cannot serve as a basis for throwing a shareholder out of a shareholder's meeting, even where, as here, it was the audience, by way of a "heckler's veto," that may have been disruptive, not Mr. Flaherty.

agree, has been incorporated into the Amended Complaint.[3] In our opening brief; Appellants' Brief ("Appellants' Br.") at 27-28; n.9, we pointed to the many statements of "fact" Defendants-Appellees fabricated before the District Court to establish that the police officer's arrest was lawful. With respect to the video, we pointed out that because Mr. Flaherty's microphone had already been turned off, the only sound in the video is background noise of another person speaking through a different microphone. The video therefore does *not* demonstrate that Mr. Flaherty was again asked to leave in the presence of the officer, and it is baseless if not misleading for Defendants-Appellees to assert otherwise.

- **This same video, which also depicted Mr. Tovar's assault, battery, and false imprisonment was "not presented to the District Court and not mentioned by the District Court."** Appellees' Br. at 29. These statements are incredible, given that it was Defendants-

---

[3] Hypocritically, while relying solely on the video in an effort to establish the lawfulness of Mr. Flaherty's arrest both below and before this Court, and by urging the District Court to review the video and conclude that Mr. Flaherty was not battered, Defendants-Appellees claim that this Court cannot consider that same video in its *de novo* review of Mr. Tovar's intentional tort claims.

Appellees who first brought a link to the video to the District Court's attention in their vain effort to demonstrate that Mr. Flaherty restated his refusal to leave in the presence of the police officer;[4] App. 34, R. Doc. 21 at 6, n.5; specifically cited back to the video in arguing that Mr. Flaherty was not battered; App. 43, R. Doc. 21, at 14; and cited to it yet again to argue that Mr. Tover had not been battered either. App. 47, R. Doc. 21, at 19, n.14. In addition, it is beyond dispute that the District Court itself cited to the video in its memorandum opinion granting Defendants-Appellees' motion to dismiss as follows: "Plaintiffs Complaint does not describe the nature of John Doe I's 'touch,' but it is ***clear from the video of Flaherty's arrest – a video embraced by the Complaint*** – that neither Doe Defendant touched Flaherty's arm for longer than five seconds." App. 106, R. Doc. 36, at 15 (emphasis added).

- **The Security Guards – Messrs. Clark and Thompson – were not agents of Defendants-Appellees Buffett or Berkshire Hathaway.**

---

[4]That Defendants-Appellees called the District Court's attention to the video for this purpose utterly belies its assertion before this Court that the question of whether the police officer heard Mr. Flaherty refuse to leave was never raised by Plaintiffs-Appellants below.

Appellees' Br. at 3, n.3.  As an initial matter, this Court may take judicial notice of the fact that Mr. Clark is Mr. Buffett's personal body guard.[5] But perhaps more important, if, in fact, Messrs. Clark and Thompson were not agents of Mr. Buffett and Berkshire Hathaway, they had no right to ask Mr. Flaherty to leave or have him arrested because they themselves had no ownership interest in the property at which the shareholders meeting was held. At bottom, Defendants-Appellees' position on this point is ludicrous.

- **After Mr. Flaherty was removed from the Arena, he was issued a "Report on the Issuance of a Ban and Bar Letter" by the Omaha Police Department.** Appellees' Br. at 7. Nothing in the record before this Court reflects that the Ban and Bar Letter was issued by the Omaha Police Department. The Amended Complaint alleges instead that Mr. Flaherty was issued the letter "by a man who never identified himself." App. 123, R. Doc. 56, at 7, ¶ 31.

---

[5] https://www.businessinsider.com/meet-dan-clark-warren-buffetts-personal-security-guard-2011-4

These purported facts neither exist nor are undisputed and should play no part in this Court's *de novo* review on appeal from a motion to dismiss, not a motion for summary judgment.

## II.   DEFENDANTS-APPELLEES' TRESPASS THEORY CANNOT BE RESOLVED ON THE PLEADINGS AND DOES NOT BAR PLAINTIFFS-APPELLANTS' TORT CLAIMS.

As we pointed out in our opening brief, and as confirmed by Defendant-Appellees' brief in response, Defendant-Appellees' arguments with respect to Plaintiffs-Appellants' tort claims lean heavily on District Court's determination that Mr. Flaherty became a trespasser upon refusal to leave, asserting that such status fatally defeats all intentional tort claims through a privilege to eject with reasonable force. But Plaintiffs alleged they were licensed and privileged to be present, including by virtue of SEC rules requiring the proponent or representative to attend and present the proposal; *see* 17 C.F.R. § 240.14a-8(h)(1)); and by corporate-law-based shareholder rights under Delaware law, the state of Berkshire Hathaway's incorporation.

### A.   The Amended Complaint Plausibly Alleged Invitation and Privilege to Attend and Present at the Shareholders Meeting.

The Amended Complaint alleges concrete facts establishing invitation: On May 1, 2023, the Director of NLPC's Corporate Integrity Project received an email

from Berkshire Hathaway's CFO, Marc Hamburg, stating, "You will have three minutes to present the proposal. However, we will be somewhat flexible as to time should you run over a minute or so." App. 119, R. Doc. 56, at 3, ¶ 13; App. 120-121, R. Doc. 56, at 4-5, ¶ 20. On May 2, 2023, NLPC received two credentials for admittance to the meeting via FedEx from Berkshire for Mr. Flaherty and Mr. Tovar. App. 121 R. Doc. 56 at 5, ¶ 21. NLPC's renewed proposal and supporting statement were published in Berkshire Hathaway's proxy dated March 17, 2023, as Proposal No. 8.5. App. 119 R. Doc. 56, at 3; App. 75-76 R. Doc. 22-2 at 15-16. On April 21, 2023, NLPC submitted a Notice of Exempt Solicitation in support of the proposal. App. 120, R. Doc. 56 at 4, ¶ 15.

These allegations plausibly establish invitation, license, and privilege, because shareholder attendance rights are implicit in corporate governance. In *Johnson v. TCOM Systems, Inc.*, 1989 WL 518870 (D.D.C., Dec. 19, 1989), the Court held:

> Johnson was barred, TCOM claimed, because of his disruptive and destructive behavior at an earlier shareholder meeting. TCOM offered Johnson "parallel briefings" and the opportunity to buy additional stock. TCOM claims that summary judgment is appropriate as to this count because, first, these were not shareholder meetings but merely briefings, and Johnson was offered the parallel briefings, which he declined to attend. TCOM also claims that there is no shareholder "right" to attend shareholder meetings, even if this could be considered a shareholder meeting. Finally, TCOM claims that Johnson can

cite no information which was both material to a shareholder decision and deliberately withheld from him.

No case law has been cited to this court which stands for the proposition that shareholders can be deliberately barred from a shareholder meeting. While Delaware corporate law, which both parties agree applies here, is known for being less restrictive of management actions, the By-Laws of the corporation make it clear that TCOM shareholders have certain rights as regards to shareholder meetings. First, they have the right to written notice not less than ten days before both annual meetings and special meetings. By-Laws, ¶¶ 11 and 14. Implicit in the right to receive notice of a meeting is a right to attend the meeting. In addition, a right to attend can be implied by ¶ 12 of the By-Laws which states that "[a]t all meeting of Stockholders, *any Stockholder* present and *entitled to vote in person* or by proxy, shall be entitled to require [that the business be conducted in a certain order]" (emphasis added). TCOM has never offered anything to controvert the implication that *all* stockholders are entitled to vote in person.

This court will not be the first to find that shareholders who have a right to receive notice of a meeting and a right to vote in person do not also have a right to attend the meeting. Further, TCOM cannot avoid this conclusion by alleging that the meetings in question were merely shareholder briefings. That is a matter in controversy and needs to be judged by a finder of fact. While TCOM makes arguments about the value of the stock as compared to Johnson's claim, and Johnson's ability to buy it, this court finds that such arguments are appropriate only as to the issue of damages, which is also a matter for the finder of fact.

*Id.* at *7. *See also Steinberg v. American Bantam Car Co.*, 76 F. Supp. 426, 436

(W.D. Pa. 1948) ("The right of a shareholder to vote upon his stock at all meetings

of shareholders appears to be a right inherent in the ownership of the shares, and as

such is a property right."); *Matter of Calamity Jane's, Inc.*, 22 B.R. 5, 6 (D.N.J. 1982) ("A shareholder's rights are the personal right to attend meetings, to vote and a property right to share in the dividends of a corporation and the distribution of its assets.").

It is thus not surprising that Defendants-Appellees do not sight a single case standing for the proposition that a public company or its chairman and CEO have an unconstrained right to throw a shareholder out of a shareholder's meeting and have him arrested for any reason or no reason at all, depriving him of his right to present a proposal and to vote on it.

**B.** **Even If Plaintiffs-Appellants' Rights To Attend and Present at the Meeting Were Not Absolute, the Question of Whether Plaintiffs-Appellants Exceeded the Scope of Their Privilege or License To Do So Is a Question of Fact That Could Not Be Resolved On a Motion To Dismiss.**

Nebraska courts consistently hold that determinations of whether an invitee or licensee exceeded the scope of their invitation or license and became a trespasser are questions of fact that cannot be resolved on a motion to dismiss. This principle applies broadly to visitor status classifications (invitee, licensee, or trespasser) and scope of invitation determinations in premises liability cases. Courts will only decide these issues as a matter of law when the undisputed evidence permits reasonable minds to reach only one conclusion. Those

12

circumstances were not present in the instant case. To the contrary, the fundamental question of whether Mr. Flaherty exceeded the scope of his privilege and license to be at the meeting because he was being "disruptive" is, in the absence of his unconditional right to be there; *see Johnson* and *Steinberg* above; a question of fact that could not be resolved on a motion to dismiss. Thus, the District Court erred in concluding, as a matter of law, that Mr. Flaherty was a trespasser and that Defendants-Appellees "privilege" to inflict intentional torts on Mr. Flaherty and Mr. Tovar was unconstrained and not subject to disputed facts.

The Nebraska Supreme Court established the fundamental principle that scope of invitation determinations are factual questions in *Malolepszy v. Central Market*, 143 Neb. 356 (1943). The court held that "the scope of the business invitation extended is a question of fact to be determined by the jury after a consideration of all the evidence bearing upon the issue. Likewise, the question whether plaintiff, in going to the store in response to the invitation extended, acted within the scope of the invitation, is a question for the jury." *Id.* at 364.

Nebraska appellate courts have consistently held that determinations of visitor status are questions of fact. In *Skinner v. Ogallala Public School Dist. No. 1*, 262 Neb. 387 (2001), the Nebraska Supreme Court clearly stated: "In regard to the

13

trial court's judgment upon trial, the determination as to whether a plaintiff is an invitee or licensee is a question of fact." *Id.* at 393.

This principle extends to trespasser determinations as well. In *Kenney v. Barna*, 215 Neb. 863 (1983), the court held that "the jury should have been instructed that the defendant would not be liable if the plaintiff was a trespasser, and further instructed as to the definition of 'trespasser,' including the element of intent." *Id.* at 871. The court found it was error for the trial court to grant a directed verdict on the trespasser issue without proper jury consideration. *Id.*

The District Court erred twice with respect to these principles. First, it made no, and could not have made any, determination as to the scope of Plaintiffs-Appellants' self-described status as "special invitees." Second, it gave no consideration to whether Mr. Flaherty exceeded the scope of that status to the extent that it justified his expulsion and arrest. And third, as to the "element of intent," there exists no allegation that Mr. Flaherty heard Mr. Buffett order him to leave the meeting or that he refused the security guards' order to leave. To the contrary, the Amended Complaint avers only that he simply requested to finish his remarks as he heard Mr. Buffett say he could do. App. 122-123, R. Doc. 56, at 6-7, ¶ 28.

Here on appeal, Defendants-Appellees are asking this Court to skip these essential analytical steps and simply find that, as a matter of Nebraska, federal, and Delaware law, the chairman and CEO of a public company can eject a shareholder and have him arrested for any reason whatsoever, including the fact that he does not personally like what the shareholder is saying about him, his relationship with others that may negatively affect the company's reputation, and his company.

## III. PLAINTIFFS-APPELLANTS STATED A CLAIM FOR PROMISSORY ESTOPPEL.

According to Defendants-Appellees, a promised invitation to attend and make a shareholder presentation at an annual meeting carries with it an implicit caveat that if the content of the presentation does not meet with the Chairman's approval while it is being delivered, the Chairman reserves the right to have the shareholder thrown out and arrested.

Nothing in the record before the District Court and this Court supports such an implied caveat. To the contrary, the "Microphone Manners" published by Berkshire Hathaway and on Plaintiffs-Appellants also relied stated that any topic other than politics or Berkshire's investments was "fair game." 122 App., R. Doc. 56, at 6, ¶ 27.

The promise on which Plaintiffs-Appellants relied to their detriment was a promise to allow them to make their shareholder presentation as is, devoid of any filtering or censorship. That promise was only reinforced when Mr. Flaherty told the Berkshire Hathaway employee standing next to him and who told him to stay "on topic" that Mr. Flaherty would not be censored and that he would take his directions from Mr. Buffett, all of which Mr. Buffet must have heard because it is reflected in the transcript. When Mr. Flaherty then asked Mr. Buffett if he could continue making his presentation, Mr. Buffett said yes, conditioned only on Mr. Flaherty's staying within his 3-minute limit. Mr. Flaherty reasonably relied on the absence of any warning from Mr. Buffett with respect to any limitation on the content of his presentation, an argument Defendants-Appellees simply ignore.[6] Any "disruption" came from the audience, not Mr. Flaherty, which Mr. Buffett could have and should have easily controlled by admonishing the attendees to let Mr. Flaherty finish his allotted three-minute presentation. And the record shows that Mr. Buffett addressed the merits of Mr. Flaherty's remarks, albeit aborted, by

---

[6] When warrned to stay on topic, Mr. Flaherty said to the Berkshire Hathawaty employee standing next to him, "You're not going to censor what I say, ma'am. I'm very sorry. And I'll appeal to the chair that I be allowed to continue," to which Mr. Buffet replied, "You may continue, but you're under a three-minute limitation." App. 87, R. Doc. 22-3 at 278.

agreeing that donations to controversial causes should be separated from the persona of the company. App. 88-90, R. Doc. 22-3 at 279-281.

IV.  **APPELLEES' ASSERTION THAT THE DISTRICT COURT GAVE NO CONSIDERATION TO THE VIDEO ESTABLISHING MR. TOVAR'S CLAIMS FOR ASSAULT, BATTERY, AND FALSE IMPRISONMENT IS PLAINLY WRONG AND WARRANTS *DE NOVO* REVIEW OF THE VIDEO BY THIS COURT.**

As noted in Part I. above, Defendants-Appellees' claim that the video was never presented to the District Court and was never considered by the District Court is specious. The District Court, stating that the video was "embraced by the Complaint," cited the video in its conclusion that Mr. Flaherty had not been battered. Given that the District Court placed the contents of the video at issue in its dismissal of the Amended Complaint, Defendant-Appellees are now estopped from raising any argument to the contrary.

As for Mr. Tovar's claim of false imprisonment, Defendants-Appellees claim without citation to any authority that it would be "unlawful" for Mr. Tovar to follow Mr. Flaherty up the stairs to the lobby (Appellees' Br. at 32) to justify the command that he return to his seat and yet claim he was free to exit the arena through those same steps. *Id.* In short, Mr. Tovar alleged a sufficient claim for false imprisonment to survive a motion to dismiss.

17

This Court may thus, on *de novo* review, consider whether the video

supports the intentional tort claims lodged by Mr. Tovar.

## CONCLUSION

For all of the forgoing reasons, the judgment of the District Court should be

reversed.

Dated:  January 27, 2026           Respectfully submitted,


/s/ Jeffrey E. McFadden
LAW OFFICES OF
JEFFREY E. MCFADDEN, LLC
312 Prospect Bay Drive East
Grasonville, MD 21638
Phone: (443) 272-4737
jmcfadden@jmcfaddenlaw.com

*Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1. This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 3,881 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because, this document has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Times New Roman.

/s/ Jeffrey E. McFadden

Attorney for: Appellants

Date: January 27, 2026